**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**BOBBY EARL WILSON, JR., # 52274**                    **PETITIONER**

**versus**                                        **CIVIL ACTION NO. 5:07cv165-DCB-MTP**

**CHRISTOPHER B. EPPS, et al.**                              **RESPONDENTS**

## REPORT AND RECOMMENDATION

BEFORE THE COURT is the *pro se* petition of Bobby Earl Wilson, Jr. for a writ of *habeas corpus* under 28 U.S.C. § 2254. Having considered the submissions of the parties, the record of the state court proceedings, and the applicable law, the undersigned is of the opinion that the Petitioner's request for relief pursuant to 28 U.S.C. § 2254 should be denied.

### PROCEDURAL HISTORY

On November 2, 2004, Petitioner Bobby Earl Wilson, Jr. was convicted of robbery in the Circuit Court of Warren County, Mississippi, and was sentenced on December 11, 2003 as a habitual offender to serve a term of life without parole in the custody of the Mississippi Department of Corrections. (R.1 at 84-85.) Wilson filed a direct appeal of his conviction and sentence to the Mississippi Supreme Court based on the following grounds: 1) "The trial court erred in denying Wilson's Motion to Suppress statements made at the time of his arrest"; 2) "The trial court erred in allowing the prosecution to amend the indictment to allow a more severe punishment than indicted by the grand jury under the habitual offender statute, Miss. Code Ann. § 99-19-81 as amended and the indictment did not state with particularity a previous conviction"; and 3) "The trial court erred in denying appellant's peremptory instruction and subsequent motion for judgment notwithstanding the verdict or alternatively for a motion for a new trial because the verdict of the jury was against the overwhelming weight of the evidence and not

supported by sufficient credible evidence."[1]  On June 8, 2006, the Mississippi Supreme Court affirmed Wilson's conviction and sentence in a written opinion.  *See Wilson v. State,* 935 So. 2d 945 (Miss. 2006), *reh'g denied*, Aug. 17, 2006, *cert. denied*, 549 U.S. 1348, Apr. 16, 2007.

On June 6, 2007, Wilson sought leave from the Mississippi Supreme Court to file his Motion for Post-Conviction Collateral Relief  in which he asserted the following claims:[2]

1.      Was Wilson denied his Sixth and Fourteenth Amendment right of the U.S. Constitution and Article Three Section Twenty-Six of the Miss. Constitution to effective assistance of counsel when counsel:

A.      Failed to request for individual voir dire of Mr. Lamb and Mr. Waters and by failing to raise this on direct appeal

B.      Failed to present Officer Leonce Young's report and videotape during the suppression hearing

C.      Failed to preserve discovery evidence for appellate review

D.      Failed to raise the issue during direct appeal that no amendment was made to the habitual underlying offense of grand larceny

E.      Failed to present evidence for a proportionality test after making a request for one and by failing to seek an answer

F.      Failed to prepare prior to the sentencing trial

G.      Failed to motion for suppression of witness pretrial identification and an in-court identification of the petitioner during the trial because the out of court identification procedure was unnecessarily suggestive and gave rise to a substantial likelihood of misidentification and there was not a sufficient independent basis apart from the out of court identification would not have occurred but for the illegal arrest of the petitioner

H.      Failed to object to prosecutor's prejudicial statement and by failing to have the trial court to instruct the jury members to disregard the prejudicial statement

I.      Failed to cite authority in support of contention during trial and on direct

---

[1]*See* State Court Record, No. 2005-KA-0137, "Briefs & Other Pleadings."

[2]He had three years from the date his "direct appeal [was] ruled upon" to do so.  Miss. Code. Ann. § 99-39-5(2).

appeal

J.      Failed to include the lesser included offense of grand larceny during trial.[3]

On June 27, 2007, the Mississippi Supreme Court denied Wilson's application stating, "The panel finds that Wilson's claims of ineffective assistance of counsel fail to meet the standard set out in ***Strickland v. Washington*** and the petition should be denied."  *See* Ex. B to Answer [13-2] (emphasis in original).

Wilson filed the instant petition [1][4][5] for writ of habeas corpus on or about August 30, 2007.  By that petition and his amended petition [69], he asserts the following grounds for relief:

**Ground One** - Denial of effective assistance of counsel in violation of the U.S. Constitution:

    A.    His counsel failed to present the report made by the arresting officer and the videotape of his arrest;

    B    His counsel failed to raise the issue on direct appeal that no amendment was made to the habitual underlying offense of grand larceny;

    C.    His counsel failed to prepare for his sentencing hearing;

    D.    His counsel failed to object to prosecutor's prejudicial statement and failed to give curative instruction;

    E.    His counsel failed to preserve discovery evidence for appellate review;

    F.    His counsel failed to present evidence for a proportionality test;

    G.    His counsel failed to cite proper case law; and

    H.    His counsel failed to suppress his identification;

**Ground Two** - Due process in violation of the U.S. Constitution [challenging the indictment];

**Ground Three** - Insufficiency of evidence in violation of the U.S. Constitution; and

**Ground Four** - Illegal search and seizure in violation of the U.S. Constitution

---

[3]*See* State Court Record, No. 2007-M-00948, "Miscellaneous Pleadings."

[challenging the trial court's denial of his motion to suppress].[4]

## DISCUSSION

The Antiterrorism and Effective Death Penalty Act (AEDPA), to which this case is subject,[5] specifies that exhaustion of a claim in state court is required for a federal court to consider the claim: "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1)(A).

To satisfy this requirement, the petitioner must present his claims to the highest state court in a procedurally proper manner so that the state courts are given a fair opportunity to consider and pass upon challenges to a conviction before those issues come to federal court for habeas corpus review. *O'Sullivan v. Boerckel,* 526 U.S. 838, 844-45 (1999). This is so because state courts, "like federal courts, are obliged to enforce federal law." *Id.* at 844. Exhaustion results from the petitioner's pursuit of his claims through state courts either by direct appeal or by post-conviction proceedings. *See Orman v. Cain,* 228 F.3d 616, 620 & n.6 (5th Cir. 2000).

Wilson has satisfied the exhaustion requirement for the grounds raised in his federal petition by first giving state courts the opportunity to resolve any constitutional issues.[6] These claims were "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). Under

---

[4]*See* Petition and Brief [1][4].

[5]*See Neal v. Puckett,* 286 F.3d 230, 235 (5th Cir. 2002).

[6]Wilson has satisfied the exhaustion requirements for his federal habeas grounds with one exception: a sub-issue of Ground One (C)- whether his counsel was ineffective for failing to offer mitigating evidence during his sentencing hearing.

the AEDPA, when the state court has adjudicated the petitioner's claims on the merits,[7] the federal court reviews mixed questions of law and fact under subsection (d)(1). *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998). Since the exhausted grounds raised in Wilson's federal petition involve mixed questions of law and fact, this court's authority to grant habeas relief on these claims is limited to a determination of whether the decisions of the Mississippi Supreme Court "[were] contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Whether the applicable law is clearly established for purposes of a Section 2254(d)(1) analysis is determined solely by reference to Supreme Court decisions "as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412 (2000). A decision by any other court "even if compelling and well-reasoned, cannot satisfy the clearly established federal law requirement under § 2254(d)(1)." *Salazar v. Dretke,* 419 F.3d 384, 399 (5th Cir. 2005).

The "unreasonable application" inquiry is based on an objective standard, and for purposes of a Section 2254(d)(1) analysis, "unreasonable" does not equate with "incorrect." *Garcia v. Dretke,* 388 F.3d 496, 500 (5th Cir. 2004). The application of clearly-established precedent must be both incorrect and unreasonable for federal habeas relief to be warranted. *Id.* "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable,"[8] but it is to review only the state court's ultimate conclusion and not the reasoning that was used to reach it. *Neal,* 286 F.3d at 246. This inquiry "is not altered when, as in this case, state habeas

---

[7] "On the merits" refers to substantive, rather than procedural, disposition of the case. *Neal v. Puckett,* 286 F.3d 230, 235 (5th Cir. 2002).

[8] *Neal,* 286 F.3d at 244 (citing *Williams v. Taylor,* 529 U.S. 362, 409 (2000)).

relief is denied without an opinion." *Schaetzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003) (vacating judgment and denying habeas corpus relief).

It is by these principles and against the backdrop of exhaustion requirements and substantive determinations that Wilson's claims must be viewed–with the added observation that a federal court does not "sit as a 'super' state supreme court" and may decide the issues presented by the habeas petition "only to the extent that federal constitutional issues are implicated." *Smith v. McCotter,* 786 F.2d 697, 700 (5th Cir. 1986). As discussed below, Wilson cannot circumvent the bar to federal habeas review by bringing his exhausted claims within the narrow exception set forth in 28 U.S.C. § 2254(d)(1).

### Ground Two[9]

In Ground Two, Wilson alleges his due process rights were violated under the U.S. Constitution. Specifically, he claims the trial court erred in allowing the state to amend his indictment to include the habitual offender statute, Miss. Code Ann. § 99-19-83.[10] Wilson claims that the amendment allowed for a more severe punishment than the original indictment by the grand jury, and the indictment should have only been amended by the grand jury.

Wilson raised this ground on direct appeal and the Mississippi Supreme Court rejected it on its merits.[11] The court held that Rule 7.09 of the Uniform Rules of Circuit and County Court

---

[9]Because Ground One references certain evidence and issues addressed in Grounds Two through Four, the court will address Ground One last.

[10]The original indictment charged Wilson as a habitual offender under Miss. Code Ann. § 99-19-81, which requires the convicted felon to be sentenced to the maximum term of imprisonment prescribed for such felony. (R.1 at 7.) The indictment was amended to charge Wilson as a habitual offender under Miss. Code Ann. § 99-19-83, which requires the convicted felon to be sentenced to life without parole. (R.1 at 11-12; 31.)

[11]*See* State Court Record, No. 2005-KA-0137, "Briefs and Other Pleadings"; Ex. A to Answer [13-2].

Practice[12] allows an amendment of an indictment to charge a defendant as a habitual offender, and Mississippi allows such an amendment even after the jury has returned a guilty verdict. *Wilson v. State*, 935 So. 2d 945, 948 (Miss. 2006) (citing *Torrey v. State*, 891 So. 2d 188, 195 (Miss. 2004)). The court found that Wilson was afforded a fair opportunity to present a defense and was not unfairly surprised. The court stated, "Here, Wilson was put on notice the State sought to amend the indictment months before trial. Likewise, the trial court allowed the amendment long before trial began." *Wilson*, 935 So. 2d at 948. Finally, the court noted that "it was not necessary for Wilson to prepare a defense based on the amended indictment because the habitual offender status did not affect the crimes with which Wilson was charged. . . . '**prior offenses used to charge the defendant as an [sic] habitual offender are not substantive elements of the offense charged**.'" *Id.* at 949 (quoting *Swington v. State*, 742 So. 2d 1106, 1118 (Miss.1999)) (emphasis and alteration in original).

Wilson's claim that the trial court erred in allowing the state to amend the indictment to include the habitual offender statute is nothing more than a claim of violation of state law which is barred from review by this court. The United States Supreme Court has long recognized that a "'mere error of state law' is not a denial of due process." *See Engle v. Isaac,* 456 U.S. 107, 121

---

[12]Rule 7.09 provides:

All indictments may be amended as to form but not as to the substance of the offense charged. Indictments may also be amended to charge the defendant as an habitual offender or to elevate the level of the offense where the offense is one which is subject to enhanced punishment for subsequent offenses and the amendment is to assert prior offenses justifying such enhancement (e.g., driving under the influence, Miss. Code Ann. § 63-11-30). Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.

n.21 (1981) (citation omitted).[13]

This court gives short shrift to Wilson's claim for federal habeas relief on this claim as the Fifth Circuit "adhere[s] to the rule that a federal habeas court will not consider such claims"[14] if the question of the sufficiency of the indictment has been presented to the state courts and the indictment has been found sufficient under state law. *McKay v. Collins,* 12 F.3d 66, 68 (5th Cir. 1994). Because Wilson's defective indictment claim was found to be without merit by the state's highest court, it is foreclosed from federal habeas review. *See Morlett v. Lynaugh,* 851 F.2d 1521, 1523 (5th Cir. 1988).

Because it is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and also because Wilson's state court conviction was not obtained in violation of any federal constitutional rights as to the claim raised in Ground Two, habeas relief under Section 2254 is not available to him on that ground. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991).

**<u>Ground Three</u>**

In Ground Three, Wilson alleges a claim for insufficiency of the evidence in violation of the U.S. Constitution. Specifically, Wilson claims the state failed to prove the element of "fear under duress."[15] He also claims that the jury verdict was against the overwhelming weight of the evidence.

---

[13] The Court further stated: "If the contrary were true, then 'every erroneous decision by a state court on state law would come [to this Court] as a federal constitutional question.'" *Id.* (citations omitted).

[14] *Alexander v. McCotter,* 775 F.2d 595, 598 (5th Cir. 1985).

[15] *See* Brief [4] at 44. Wilson cites to *Smith v. State* for the proposition that when fear is relied upon as proof for the charge of robbery, "it must be the fear under duress of which the owner parts with possession." *Smith v. State*, 913 So. 2d 365, 367 (Miss. Ct. App. 2005) (quoting *Crocker v. State*, 272 So. 2d 664, 665 (Miss. 1973)).

Wilson raised these issues on direct appeal, and the court rejected them on their merits.[16] The court held, "Considering the evidence in the light most favorable to the State, we find there was sufficient evidence to convict Wilson of robbery." *Wilson v. State*, 935 So. 2d 945, 952 (Miss. 2006). The court found that the elements of robbery as defined by Miss. Code Ann. § 97-3-73 were met since Ms. Robinson, the bank teller, testified that she witnessed Ms. Cunningham, another teller putting money into a plastic bag, and then Wilson signaled her to do the same and she complied and emptied her cash drawer into the bag. Wilson then stated, "That's not enough." Ms. Robinson then witnessed Ms. Cunningham walk over to Ms. Knox, the drive-through teller, to get more money. Ms. Robinson further testified that she was scared. *Wilson*, 935 So. 2d at 952. Ms. Robinson testified that she did not see a knife, but Ms. Knox testified that she saw Wilson's knife on the counter and that she was afraid. The court further reviewed Wilson's challenge to the weight of the evidence under the correct state law standard,[17] and held that "no new trial [was] warranted as the jury's verdict [was] consistent with the weight of the evidence." *Id.* at 953.

The crime of robbery[18] is codified by Miss. Code Ann. § 97-3-73, which provides: "Every person who shall feloniously take the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear

---

[16]*See* State Court Record, No. 2005-KA-0137, "Briefs and Other Pleadings"; Ex. A to Answer [13-2].

[17]The court of appeals stated, "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Wilson*, 935 So. 2d at 953 (quoting *Bush v. State*, 895 So. 2d 836, 844
(Miss. 2005)).

[18]As previously stated, Wilson was indicted for armed robbery, but was found guilty of the lesser included offense of robbery. (R.1 at 5-7, 71-72, 84-85.)

of some immediate injury to his person, shall be guilty of robbery." *See* Miss. Code Ann. § 97-3-73.

Insufficiency of the evidence can support a claim for habeas relief only if the evidence, when viewed in the light most favorable to the state, is such that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also Dupuy v. Cain*, 201 F.3d 582, 589 (5th Cir. 2000).[19] This standard of review allows the trier of fact to find the evidence sufficient to support a conviction, even if "the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992) (citation omitted). Thus, it "preserves the integrity of the trier of fact as the weigher of the evidence." *Bujol v. Cain*, 713 F.2d 112, 115 (5th Cir. 1983).

The record reflects that Martha Robinson, a bank teller employed by Trustmark National Bank, testified that she was working at the bank on the morning of March 30, 2004. She noticed a customer come in and then Mary Cunningham, another teller, called her name. When she looked towards Ms. Cunningham, she saw her with a blue Wal-Mart bag, and immediately realized the bank was being robbed.[20] The robber then looked at her and said, "You, too," so she emptied her cash drawer into the bag. He then stated, "That's not enough." Ms. Cunningham then walked to the drive-through teller, Georgia Knox, and she put her money in the bag. Ms. Robinson testified that she did see the robber, and identified him in the courtroom as Wilson.

---

[19] This standard of review is applied with "explicit reference to the substantive elements of the criminal offense as defined by state law." *Dupuy*, 201 F.3d at 589 (quoting *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979)).

[20] The state planned to call Mary Cunningham as a witness, but she did not testify because her son died on the day of the trial. (R.2 at 93; R.3 at 274.)

10

When asked if she was scared at the time of the robbery, she replied, "Of course." She also identified Wilson as the robber captured in the photograph of the bank robbery taken by the surveillance camera, and identified the clothes Wilson was wearing at the time of the robbery. Finally, she testified that she identified Wilson as the robber during a photograph line-up on the day of the robbery. (R.3 at 195-202.)

Ms. Knox corroborated Ms. Robinson's testimony above. Ms. Knox testified that the robber had a knife on the counter during the robbery. She testified that the knife the robber had looked similar to the knife submitted by the state as exhibit 5, which was recovered from Wilson after the robbery. Ms. Knox testified that she was afraid and felt threatened by the knife and that is why she put the money in the bag. (R.3 at 206-16; 250-51.)

The state also presented as evidence the money and the Wal-Mart bag found in a parking lot next to Trustmark Bank. The money had red dye on it. (R.3 at 255-60.) Debra Kinnebrew, branch manager of Trustmark Bank, testified that the money recovered by the police was the same money taken from the bank. She testified that the bank kept certain bills that are not circulated to the public, and were only given out in the event of a bank robbery; the inventory of the bills recovered matched the inventory of the special bills kept by the bank. She further testified that the bills recovered had red dye on them due to a dye pack given to the robber, which activates by sensor 30-45 seconds after the pack leaves the bank. (R.3 at 260-74.)

Further, as set forth in detail below,[21] Wilson stated he was the "bank robber" when he was approached by Officer Leonce Young shortly before his arrest. Specifically, Officer Young said "Hey . . . come here buddy . . . what's your name?" The man looked up and said "bank

---

[21]The testimony set forth under Ground Four below was given by Officer Young during a suppression hearing. However, Officer Young gave similar testimony during the trial. (R.3 at 217-35.)

robber." (R.3 at 217-35.) Moreover, the state presented physical evidence of Wilson's clothes worn during the robbery that were covered with red dye, and Sergeant Virgil Woodall testified that Wilson had red dye on his hands at the time of his arrest. (R.3 at 252-54.)

Wilson argues that Georgia Knox was not listed in the indictment and that she is the only one who testified that she saw the knife. He claims that Ms. Robinson, who was named in the indictment, testified that she never saw the knife, and thus, the state failed to establish the element of fear under duress. However, as set forth above, Ms. Robinson testified that she was scared at the time she put the money in the bag. Viewing the evidence in the light most favorable to the state, this court cannot conclude that no "rational trier of fact could have found the essential elements of [robbery] beyond a reasonable doubt." *See Santellan*, 271 F.3d at 193 (quoting *Jackson*, 443 U.S. at 319); *see also McKee v. State*, 791 So. 2d 804, 807 (Miss. 2001) (holding that victim's testimony that she saw the thief approach her prior to the theft and that she was "'uncomfortable,' 'frightened' and 'afraid' . . . established the elements of robbery (i.e. the taking of one's personal property from her person and against her will, by putting such person in fear of some immediate injury to her person"). Accordingly, the court finds that the Mississippi Supreme Court's decision was not contrary to or an unreasonable application of clearly established federal law.

Finally, a challenge to the "weight" of the evidence is not a constitutional claim, and thus is not a ground for habeas relief. *See Siegfried v. Greer,* No. 1:05cv370-DMR-JMR, 2007 WL 1345469, at *18 (S.D. Miss. May 9, 2007) (citing *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985)); *Vaughn v. King*, No. 2:06cv213-M-A, 2007 WL 2012297, at *3 (N.D. Miss. July 6, 2007) (citing *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985)); *Griffin v. Kelly*, No. 4:05cv161-TSL-LRA, 2007 WL 2344955, at *5 (S.D. Miss. July 23, 2007) (citing *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985)). Accordingly, Wilson is not entitled to habeas

relief on his challenge to the weight of the evidence, and habeas relief on this claim must be denied.

**Ground Four**

In Ground Four, Wilson alleges that his constitutional rights were violated when the trial court denied his motion to suppress.[22]  Specifically, he claims that Officer Young did not have probable cause to stop and question him.  He claims that his statements made prior to his arrest should have been suppressed.  Wilson claims that Officer Young stopped him in the parking lot of County Market because he thought he was a possible shoplifter; not a bank robber.

The record reflects that Wilson raised this issue before the trial court in a motion to suppress.  (R.1 at 29-30.)  During the suppression hearing, the court heard testimony from Officer Leonce Young, Captain Mark Culbertson, and Sergeant Virgil Woodall. (R.2 at 1-29.)  Officer Young testified that on March 30, 2004, he was responding to a dispatch call regarding a potential bank robbery.  While on the way to the scene, Officer Young saw a man (later identified as Wilson) crouch down in the parking lot of County Market as his police car was passing by and then saw the man run across the street.  Officer Young testified that he thought the man was possibly a shoplifter.  Officer Young saw the man (Wilson) run behind a parked school bus.  When Officer Young got out of the car and walked behind the bus, he noticed that the man was breathing heavily.  Officer Young said "Hey . . . come here buddy . . . what's your

---

[22]While Wilson titles this ground as "illegal search and seizure in violation of the U.S. Constitution," the facts and arguments supporting this ground allege that his constitutional rights were violated when the trial court denied his motion to suppress.  *See* Brief [4] at 49-53.  To the extent Wilson intends to raise a claim of illegal search and seizure in violation of the Fourth Amendment, such claim is without merit.  First, such a claim was not exhausted.  Second, such a claim would be precluded from federal habeas review pursuant to *Stone v. Powell*.  *See Stone v. Powell*, 428 U.S. 465, 482 (1976) (holding that "where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.").

name?"  The man (Wilson) looked up and said "bank robber."  Officer Young then drew his weapon, and told Wilson to lay down face-down, hand-cuffed him and read him his rights.  (R.2 at 2-6.)  Officer Young testified that he noticed red dye on Wilson's fingers and shirt.

Officer Young testified that he read Wilson his rights again after the other officers arrived.  Officer Young asked the man, "If you're the bank robber . . . where's the money at?"  Wilson responded, "That's not my job . . . Y'all look for it."  (R.2 at 8.)  Captain Culbertson testified that Wilson then stated, "Man, I rob banks, and this ain't my first."  (R.2 at 16-17.)  Sergeant Woodall corroborated Culbertson's testimony.  (R.2 at 20-21.)

After hearing the testimony and the arguments from counsel, the trial judge denied Wilson's motion to suppress.  (R.1 at 32, 49; R.2 at 28.).  Specifically, the trial judge found as follows:

> The Court is going to overrule the motion to suppress.  The Court is going to find that the officer had grounds under, I believe, Terry v. Ohio to approach the defendant and ask him his name, to investigate suspicious activity, which Terry v. Ohio addresses.  He had grounds to approach the defendant and ask him his name.  At that point the defendant blurted out that he was a bank robber.  That statement will not be suppressed.  That was a spontaneous admission that was not directed at what the officer was asking.  The Court finds the officer then advised him of his Miranda rights.  He made two more statements concerning the bank robbery after he had been informed of his rights, and the Court will not suppress those statements.

(R.2 at 28.)

Wilson raised this issue on direct appeal and the Mississippi Supreme Court rejected it on its merits.  *See Wilson v. State*, 935 So. 2d 945 (Miss. 2006).  The court rejected Wilson's claim that because Officer Young stopped him as a suspected shoplifter and the misdemeanor crime of shoplifting was not committed in his presence, the stop resulted in an illegal arrest.  The court reasoned, "The distinction is not whether the crime was a misdemeanor or a felony for an investigative stop, but whether the officer had reasonable suspicion to believe that a crime had

been committed." *Wilson*, 935 So. 2d at 950. The court stated,

> The constitutional requirements for an investigative stop and detention are less stringent than those for an arrest. This Court has recognized that "given reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest," that is, on less information than is constitutionally required for probable cause to arrest.

*Id*. (quoting *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 114-15 (Miss. 1999)). The court noted that the United States Supreme Court approved this investigatory approach in *Terry v. Ohio*, 392 U.S. 1 (1968) and *Adams v. Williams*, 407 U.S. 143 (1972). *Id.*

"When a federal court reviews state court evidentiary rulings on a petition for habeas corpus, it will grant relief only if the state court error is sufficiently egregious to render the entire trial fundamentally unfair." *Edwards v. Butler*, 882 F.2d 160, 164 (5th Cir. 1989); *see also Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999) ("A state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair."). Moreover, "[f]ederal habeas corpus relief may be granted on erroneous state evidentiary rulings only if the challenged evidence is a crucial, critical, or highly significant factor in the context of the entire trial." *Thomas v. Lynaugh*, 812 F.2d 225, 230 (5th Cir. 1987).

The court gives great deference to the Mississippi Supreme Court's decision that the trial judge did not err in denying Wilson's motion to suppress. *See Wilson*, 935 So. 2d at 945-50; *Buntion*, 524 F.3d at 670 ("The factual findings of the state habeas court are to be given deference unless they are "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."). Based on the evidence, as set forth under Ground Three above, this court cannot conclude that the trial court's admission of the challenged evidence rendered the entire trial fundamentally unfair. *See Edwards*, 882 F.2d at 164.

Accordingly, habeas relief on this ground must be denied.

**Ground One**

In Ground One, Wilson claims he was denied effective assistance of counsel in violation

of the United States Constitution. Specifically, he alleges the following eight claims:

A.      His counsel failed to present the report made by the arresting officer and the videotape of his arrest;

B       His counsel failed to raise the issue on direct appeal that no amendment was made to the habitual underlying offense of grand larceny;

C.      His counsel failed to prepare for his sentencing hearing;

D.      His counsel failed to object to the prosecutor's prejudicial statement and failed to give a curative instruction;

E.      His counsel failed to preserve discovery evidence for appellate review;

F.      His counsel failed to present evidence for a proportionality test;

G.      His counsel failed to cite to proper case law; and

H.      His counsel failed to suppress his identification.[23]

Wilson raised these issues in his state motion for post-conviction collateral relief, and the

Mississippi Supreme Court rejected them on their merits, holding "The panel finds that Wilson's

claims of ineffective assistance of counsel fail to meet the standard set out in ***Strickland v.

Washington*** and the petition should be denied."[24] (emphasis in original).

Given that an ineffective assistance of counsel claim presented for habeas review

---

[23]*See* Petition and Brief [1][4].

[24]*See* State Court Record, No. 2007-M-00948, "Miscellaneous Pleadings"; Ex. B to Answer [13-2].

presents a mixed question of law and fact,[25] and that *Strickland v. Washington*[26] is the "clearly established Federal law" which governs such claims, the Section 2254(d)(1) issue in this case is "whether the Mississippi Supreme Court's decision to reject [Wilson's] ineffective assistance claim[s] 'involved an unreasonable application' (and not merely an incorrect application) of *Strickland.*" *Neal,* 286 F.3d at 235-36.

It was in *Strickland* that the United States Supreme Court defined the standard by which an ineffective assistance of counsel claim in a habeas proceeding is to be measured: Wilson must show that his "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Motley v. Collins,* 18 F.3d 1223, 1226 (5th Cir. 1994) (stating that satisfaction of the standard requires a showing that counsel's acts "fell below an objective standard of reasonableness"). "To meet the prejudice prong of the *Strickland* test, the defendant may not simply allege but must 'affirmatively prove' prejudice." *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir. 1986) (citing *Celestine v. Blackburn*, 750 F.2d 353, 356 (5th Cir. 1984)). Further, Wilson must not only prove that the outcome of his trial would have been different "but for counsel's alleged errors," but must also prove that "'the result of the proceedings was fundamentally unfair or unreliable.'" *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

In Ground One (A) of his petition, Wilson claims that his trial counsel was ineffective for failing to present the report made by the arresting officer and the videotape of his arrest. He claims that this deficiency left the incriminating statements alleged by the witnesses to stand

---

[25]*Nixon v. Epps,* 405 F.3d 318, 324 (5th Cir. 2005).

[26]466 U.S. 668 (1984).

without being rebutted.

The record reflects that Wilson's counsel questioned Officer Leonce Young, the arresting officer, during the suppression hearing and thoroughly questioned him during the trial regarding his report. (R.2 at 12; R.3 at 226-35.) During the trial, Wilson's counsel actually had Officer Young read portions of his report into evidence. (R.3 at 226-35.) Accordingly, Wilson's counsel apparently had the portions of the report admitted he thought were favorable to his client, rather than admitting the entire report.[27]

Moreover, there is no evidence supporting Wilson's bare assertion that the videotape would be "highly favorable to [his] case."[28] Sergeant Virgil Woodall's report states that the crime scene investigators collected a videotape from a camera that was mounted in the front windshield of Officer Young's vehicle. Sergeant Woodall's report states that the video shows the suspect (Wilson) running across Clay Street onto Hayes Street, near the location of the bank.[29] The court sees no way the described footage would be beneficial to Wilson's defense; this description of the video footage merely corroborates Officer Young's testimony. (R.3 at 219-20.) Accordingly, this court cannot conclude that counsel's decision not to seek admission of the report and the videotape was deficient.

In Ground One (B) of his petition, Wilson claims that his trial counsel was ineffective for failing to raise the issue on direct appeal that no amendment was made to the habitual underlying offense of grand larceny. The habitual offender portion of Wilson's original indictment states that he was convicted of grand larceny in the Circuit Court of Warren County

---

[27]*See* Report, Appendix S [5-2] at 37.

[28]*See* Brief [4] at 27.

[29]*See* Report, Appendix T [5-2] at 38-39.

Mississippi on August 5, 1994, Cause No. 11771V, and was sentenced to serve five years imprisonment. (R.1 at 7.) This portion of the indictment stated the correct Cause No. and date, but the actual charge was auto burglary and not grand larceny. (R.1 at 7, 84-85; R.4 at 316-32.) Wilson was sentenced as a habitual offender under this charge, in addition to a prior robbery charge, even though the indictment was never amended to state auto burglary rather than attempted grand larceny.[30] *Id.*

This claim is wholly without merit. Indeed, Wilson's counsel did raise this issue on direct appeal.[31] Moreover, appellate counsel is not required to raise every possible issue on appeal. *See Wicker v. McCotter*, 783 F.2d 487, 497 (5th Cir. 1986) (holding that defendant's appellate counsel was not ineffective, where he "raised and extensively briefed a number of issues[;]" the fact that appellate counsel did not argue every possible point on appeal did not render him ineffective).

In Ground One (C) of his petition, Wilson claims that his trial counsel was ineffective for failing to prepare for his sentencing hearing. Specifically, Wilson claims his trial counsel failed to notice the error in the indictment referenced above in Ground One (B), and did not object to the error until it was pointed out by the court. Even assuming Wilson's counsel was deficient for failing to notice the error in the indictment, Wilson has failed to show he was prejudiced by the alleged deficiency. Once the error was discovered, Wilson's counsel argued that the state had not met its burden of proof in establishing that Wilson was a habitual offender, and that it was too late for the state to amend the indictment to reflect the correct prior convictions. (R.4 at 328-

---

[30]The court ruled that Wilson was sufficiently on notice of the crimes alleged, and that the error in the nature of the crime was a technical error and did not make the charge invalid under Miss. Code Ann. § 99-19-83. (R.4 at 331-32.)

[31]*See* State Court Record, No. 2005-KA-0137, "Briefs and Other Pleadings."

31.)   The court ruled that Wilson was sufficiently on notice of the crimes alleged, and that the error in the nature of the crime was a technical error and did not make the charge invalid under Miss. Code Ann. § 99-19-83.  (R.4 at 331-32.)  Based on the court's ruling, even if Wilson's counsel had noticed the error prior to the court, the result would have been the same.  Based on the record before the court, Wilson has failed to establish prejudice and has failed to prove that "'the result of the proceedings was fundamentally unfair or unreliable.'" *Vuong*, 62 F.3d at 685 (quoting *Lockhart*, 506 U.S. at 369).

Wilson also claims that his trial counsel failed to properly investigate prior to the sentencing hearing.  Although not specifically argued in his Petition [1] or Brief [4], in previous pleadings requesting discovery and an evidentiary hearing, Wilson claims his counsel was ineffective for failing to present mitigating evidence during his sentencing hearing.  *See* Motions [58][64][66].  Based on the record, counsel's failure to present mitigating evidence was not deficient.[32]  The record reflects that prior to trial, Petitioner informed his trial counsel of his prior treatment for mental illness.  *See* Affidavit [59].  Petitioner alleges that his counsel made a note of what he told him.  The record further reflects that Petitioner's trial counsel filed a motion for a psychiatric examination at the Mississippi State Hospital; the trial court granted the motion and ordered Wilson to submit to a psychiatric evaluation.  (R.1 at 9-10, 28.)  Specifically, the court ordered Wilson to be examined by Dr. Phillip Scurria regarding his competency for trial, his

---

[32]The court also notes that this specific issue has not been properly exhausted. *See supra*, 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999) (holding that in order to satisfy this requirement, the petitioner must present his claims to the highest state court in a procedurally proper manner so that the state courts are given a fair opportunity to consider and pass upon challenges to a conviction before those issues come to federal court for habeas corpus review).  While Wilson raised several ineffective assistance of counsel claims in his state motion for post-conviction relief, he did not raise this specific issue. *See* State Court Record, No. 2007-M-00948, "Miscellaneous Pleadings."  Nonetheless, "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).

degree of criminal responsibility, and any recommendation for disposition. (R.1 at 28.) After performing the psychiatric evaluation, Dr. Scurria put his findings in a letter and sent a copy to the trial judge, the State, and Wilson's trial counsel. (R.2 at 33.) Dr. Scurria's letter was marked for identification as the State's Exhibit 1. *See* Notice [75]; Sealed Document [76]. Wilson's trial counsel stated that they did not plan on using the evaluation, but had no objection to it being marked for identification. (R.2 at 33-34.) Wilson was found competent to stand trial. *See* Sealed Document [76]; Affidavit [59]; *see also* (R.2 at 2.). Dr. Scurria also opined that Wilson "had the mental capacity to distinguish right from wrong and was not over mastered by any delusional compulsion." *See* Sealed Document [76].

Based on the foregoing, this court cannot conclude that counsel's failure to present evidence of the alleged mitigating factor of Wilson's history of mental illness "fell below an objective standard of reasonableness." *See Motley,* 18 F.3d at 1226. Even if counsel's failure was deficient, Wilson has failed to establish prejudice. *See Bonvillain*, 780 F.2d at 1253.

Wilson was found to be a habitual offender under Miss. Code. Ann. § 99-19-83, which provides as follows:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence **shall be sentenced to life imprisonment**, and such sentence **shall not be reduced or suspended nor shall such person be eligible for parole or probation**.

Miss. Code. Ann. § 99-19-83 (emphasis added). Indeed, the judge stated that he "ha[d] no choice but to sentence [Wilson] to life in the penitentiary without parole." (R.4 at 331-32.)

In Ground One (D) of his petition, Wilson claims that his trial counsel was ineffective for failing to object to the prosecutor's prejudicial statement and for failing to give a curative

instruction.  Specifically, Wilson takes issue with the prosecutor's statement that Mary Cunningham, one of the state's key witnesses, could not testify because her son passed away the morning of the trial.  Wilson concedes his trial counsel moved for a mistrial based on the statement, but claims he was deficient for not submitting a curative instruction.  Wilson claims he was prejudiced because the state was relieved from proving its case.

The record reflects that during voir dire, the prosecutor approached the bench and advised the judge that Mary Cunningham's son died that morning.  The trial judge then asked the potential jurors who had indicated they knew Ms. Cunningham whether they could judge her testimony fairly given the knowledge that her son had passed away; both potential jurors indicated that they could, although neither were ultimately selected as jurors.  (R.2 at 93-94.) The next mention of Ms. Cunningham's son occurred during a bench conference (outside the presence of the jury) when the prosecutor approached the judge regarding the sequence of the state's witnesses; he advised the judge and defense counsel that Ms. Cunningham was trying to make it to the courthouse, and that he may have to question her out of sequence. (R.3 at 185-86.) The only other mention of Ms. Cunningham's son occurred during the direct examination of Debra Kinnebrew.  When the prosecutor asked Ms. Kinnebrew if she knew where Mary Cunningham was, she replied that she was probably at the hospital or the funeral home because her son had passed away that morning.  (R.3 at 274.)  Wilson's counsel did not object at that point, but later moved for a mistrial based on the alleged prejudicial effect of the testimony.  (R.3 at 282-83.)  The trial court denied defense counsel's motion, finding that the explanation of why Ms. Cunningham was not present at the trial did not prejudice Wilson in any way.  (R.3 at 283-84.)

Based on the circumstances, the court concludes that Wilson's counsel was not deficient for failing to submit a curative instruction.  The testimony merely provided an explanation of

why Ms. Cunningham, who was listed in the indictment as one of the robbery victims, was not present at trial. Counsel was not prevented from arguing that the state failed to prove the elements of robbery due to the absence of Ms. Cunningham's testimony, and in fact made such an argument. (R.4 at 300-03.) Moreover, even assuming Wilson's counsel was deficient for failing to offer a curative instruction, Wilson has failed to prove that the jury verdict would have been different "but for counsel's alleged errors" and that "'the result of the proceedings was fundamentally unfair or unreliable.'" *Vuong*, 62 F.3d at 685. Given the overwhelming testimony and physical evidence offered by the state as summarized above under Ground Three, this court cannot conclude that the verdict would have been different but for counsel's alleged deficiency.

In Ground One (E) of his petition, Wilson claims that his trial counsel was ineffective for failing to preserve discovery evidence for appellate review. Specifically, Wilson complains that his counsel did not provide him with a copy of the videotape of his arrest. As discussed above under Ground One (A), Wilson's counsel apparently chose not to offer the videotape footage because it was not favorable Wilson's defense. Accordingly, Wilson's argument that his counsel was deficient for not providing Wilson with a copy of the tape for appellate review is factually and legally without merit.

In Ground One (F) of his petition, Wilson claims that his trial counsel was ineffective for failing to present evidence for a proportionality test during his sentencing hearing. This ground is without merit. The record reflects that Wilson's counsel did request a proportionality review during his sentencing hearing and presented his arguments regarding same. (R.4 at 328.) The fact that Wilson's counsel did not present this argument to his liking or demand a decision from the judge does not render his performance deficient. As Respondents point out, Wilson fails to state what additional evidence his counsel should have presented, and there is no evidence to suggest that the trial judge did not consider his arguments.

In Ground One (G) of his petition, Wilson claims that his trial counsel was ineffective for failing to cite proper case law.  While Wilson lists this ground in his actual Petition [1], he fails to provide any factual support or explanation for the ground in his Petition or his Brief [4]. Accordingly, it is unclear what Wilson is attempting to argue.  Wilson made a similar argument in his state motion for post-conviction collateral relief (Ground One (I)),[33] so the court must assume he is raising the same argument.  Wilson claims that his counsel was deficient for failing to cite to Miss. Code Ann. § 99-3-7[34] during the suppression hearing in support of his argument that Officer Young lacked probable cause to arrest him.  Although Wilson's counsel did not cite this statute by number, it appears he made his argument based on this statute.[35]  Regardless, even if his counsel had cited this statute by number, it would not have changed the outcome.  As

---

[33]*See* State Court Record, No. 2007-M-00948, "Miscellaneous Pleadings."

[34]Miss. Code Ann. § 99-3-7 provides in pertinent part:

(1) An officer or private person may arrest any person without warrant, for an indictable offense committed, or a breach of the peace threatened or attempted in his presence; or when a person has committed a felony, though not in his presence; or when a felony has been committed, and he has reasonable ground to suspect and believe the person proposed to be arrested to have committed it; or on a charge, made upon reasonable cause, of the commission of a felony by the party proposed to be arrested. And in all cases of arrests without warrant, the person making such arrest must inform the accused of the object and cause of the arrest, except when he is in the actual commission of the offense, or is arrested on pursuit.

(2) Any law enforcement officer may arrest any person on a misdemeanor charge without having a warrant in his possession when a warrant is in fact outstanding for that person's arrest and the officer has knowledge through official channels that the warrant is outstanding for that person's arrest. In all such cases, the officer making the arrest must inform such person at the time of the arrest the object and cause therefor. If the person arrested so requests, the warrant shall be shown to him as soon as practicable.

[35]Wilson's counsel argued that Officer Young did not have probable cause to arrest Wilson because he thought he was a shoplifter, yet he did not witness the crime as required by Miss. Code Ann. § 99-7-3.  (R.2 at 23-25.)

discussed above under Ground Four, the trial judge found that Officer Young made a proper investigatory stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968).[36]  (R.2 at 28.)

Finally, in Ground One (H) of his petition, Wilson claims that his trial counsel was ineffective for failing to suppress his identification.  Like Ground One (G), Wilson lists this ground in his actual Petition [1], but fails to provide any factual support or explanation for the ground in his Petition or his Brief [4].  Wilson made a similar argument in his state motion for post-conviction collateral relief (Ground One (G)),[37] so the court must again assume he is raising the same argument.  Wilson claims his counsel was ineffective for failing to move to suppress Martha Robinson's pretrial identification of Wilson, since such identification was unnecessary, suggestive, and tainted.

The record reflects that Ms. Robinson identified Wilson as the robber during the trial, and testified that she identified Wilson during a photograph line-up the day of the robbery.  (R.3 at 197-201.)  Wilson's counsel cross-examined Ms. Robinson about her testimony.  (R.3 at 202-04.)  The record reflects no deficient performance on the part of Wilson's counsel; accordingly, this ground is without merit.  *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering;  it is the very opposite").  Based on the foregoing, this court cannot conclude that counsel's alleged failures constituted deficient performance or resulted in prejudice to Wilson.  *See Lockhart*, 506 U.S. at 368-70 (emphasizing that the "Sixth Amendment right to counsel exists in order to protect the fundamental right to a fair trial" and that "the touchstone of an ineffective-assistance claim is the fairness of the

---

[36]In *Terry*, the Supreme Court held in part, that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest."  *Terry v. Ohio,* 392 U.S. 1, 22 (1968).

[37]*See* State Court Record, No. 2007-M-00948, "Miscellaneous Pleadings."

adversary proceeding") (internal quotations and citations omitted); *see also Miller v. Johnson,* 200 F.3d 274, 282 (5th Cir. 2000).[38]  Given the deferential standards that apply, the Mississippi Supreme Court's rejection of Wilson's ineffective assistance of counsel claims does not involve an objectively unreasonable application of *Strickland* to the facts of his case.  *See Neal,* 286 F.3d at 247 (affirming denial of petition).  Therefore, Wilson is not entitled to habeas relief on these grounds.

## RECOMMENDATION

For the reasons stated above, it is the recommendation of this court that the relief sought in Wilson's Petition for Writ of Habeas Corpus [1] be denied and that the petition be dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party.  The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected.  *Douglass v. United Servs. Auto. Ass'n,* 79

---

[38] "In the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced his right to a fair trial, we can find no merit to these claims."  *Id.* (internal alterations and citation omitted).

F.3d 1415, 1428-29 (5th Cir. 1996).

This the 27th day of July, 2009.

s/ Michael T. Parker
United States Magistrate Judge